UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 0 1 2013
```

OLGA MATOS,

   Plaintiff,

   -v-

THE CITY OF NEW YORK, ET AL.,

   Defendants and Third-Party Plaintiffs,

   -v-

DRUG ENFORCEMENT ADMINISTRATION,

   Third-Party Defendant.

------------------------------------------------------------------X

11 Civ. 3107 (AJN)

<u>ORDER</u>

ALISON J. NATHAN, District Judge:

 Plaintiff, Olga Matos, brings this action alleging violations of 42 U.S.C. § 1983 and various state law torts against the City of New York, the Property Clerk of the New York City Police Department, and Police Officer Dustin Genco. (Dkt. # 17)  In essence, Plaintiff claims that her 2006 Toyota Tundra was improperly seized by Officer Genco and turned over to the Property Clerk, who in turn improperly released the vehicle to non-party Wells Fargo Bank, who sold the vehicle at auction. (*Id.*)

 Defendants City of New York and the Property Clerk subsequently filed a third party complaint against the United States Drug Enforcement Administration (the "DEA") seeking indemnification. (Dkt. # 20)  Defendants City of New York and the Property Clerk allege that, at the time that Plaintiff's vehicle was seized, Officer Genco was acting as a deputized member of the New York Drug Enforcement Task Force operating under the supervision and direction of the DEA – not as a New York City police officer . (*Id.*)  The DEA answered the third party

1

complaint, (Dkt. # 24), and moved to dismiss Plaintiff's official capacity claims against Officer Genco, (Dkt. # 26).  Plaintiff did not oppose the DEA's motion, and the motion was granted by the Court on July 30, 2012.  (Dkt. # 40)

Before the Court is the motion of Defendants City of New York, the Property Clerk and Officer Genco for summary judgment on all of Plaintiff's remaining § 1983 claims.  (Dkt. # 33) These defendants also ask the Court to decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  (*Id.*)  For the following reasons, Defendants' motion is GRANTED in its entirety.

## I.   LEGAL STANDARD

Summary judgment is properly granted if, after reviewing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c); *Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000).  For summary judgment purposes, a genuine issue exists if the evidence is such that a reasonable jury could decide in the non-moving party's favor.  *Id.*

In a summary judgment setting, "the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists."  *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).  However, "[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence . . . on an essential element of the nonmovant's claim."  *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).  "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly &*

*Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted). "More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (citations omitted).

## II.   FACTS

Unless otherwise noted, the following facts are undisputed or taken in the light most favorable to Plaintiff.[1]  To the extent that Plaintiff objects to the use of Officer Genco's declaration as a basis for any of the following facts, (Opp. 9), the Court finds Plaintiff's arguments unavailing.[2]  Fed.R.Civ.P. 56(c) requires that declarations be made on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant is competent to testify on the matters stated.  Officer Genco's declaration satisfies these requirements.  Furthermore, in so far as Plaintiff objects to the portion of Officer Genco's declaration discussing the content of wiretaps listened to by Officer Genco, this objection is without merit because the content of the wiretaps is relevant not for the truth of the matter asserted in the telephone conversations but for assessing what information was known by Officer Genco at the time that the Toyota Tundra was seized.  Consequently, the Court will consider Officer Genco's declaration.

At all times relevant to this action, Plaintiff resided with her husband, Jose Jiminez, in an apartment building in the Bronx, New York. (Def. 56.1 ¶¶ 1, 2)  Mr. Jiminez was the superintendent of their building. (Def. 56.1 ¶ 3)  In 2009, Plaintiff and Mr. Jiminez purchased a 2006 Toyota Tundra. (Def. 56.1 ¶¶ 13, 14)  Plaintiff and Mr. Jiminez made a down payment of

---

[1] If Plaintiff has not disputed a particular fact in Defendant's 56.1 Statement or has offered no admissible evidence to refute that fact, that fact is deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

[2] Plaintiff argues that Officer Genco's declaration fails to satisfy the requirements of Fed.R.Civ.P. 56(e). (Opp. 9)  Because Fed.R.Civ.P. 56(e) does not list requirements for declarations, the Court assumes that Plaintiff means to refer to Fed.R.Civ.P. 56(c).

$2,000 and agreed to pay $415.78 per month to Wachovia Dealer Services, the lien holder

assignee. (Def. 56.1 ¶ 15)  Wachovia Dealer Services subsequently merged with Wells Fargo

Bank. (Def. 56.1 ¶ 16)

At all times relevant to this action, Officer Genco was a member of the New York Police

Department. (Def. 56.1 ¶ 7)  Beginning in March or April 2008 and continuing at least through

May 2012, Officer Genco was also a deputized Task Force Officer with the DEA.[3]  (Def. 56.1 ¶

8-9; Lippin 1st Decl. Exs. R, S)  As a deputized DEA officer, Genco was authorized to exercise

the powers of federal personnel, including, among other things, to "make seizures of property

pursuant to the provisions of . . . 21 U.S.C. §§ 801-904," and to "perform such other law

enforcement duties as the Attorney General may designate." (Def. 56.1 ¶¶ 10-11; Lippin 1st

Decl. Ex. S)

In the fall of 2009, Officer Genco began working with the New York Drug Enforcement

Task Force investigating a drug trafficking operation working out of the building in which

Plaintiff and Mr. Jiminez lived. (Genco Decl. ¶ 4)  Wiretap intercepts revealed that Mr. Jiminez

provided apartments to the head of the drug trafficking operation for the purpose of hiding

narcotics and sales locations and received payment for these services. (Genco Decl. ¶ 6; Lippin

1st Decl. Ex. P)  At various times in the investigation, Officer Genco conducted surveillance of

the building. (Def. 56.1 ¶ 18; Genco Decl. ¶ 5)  Among other things, Officer Genco observed

Mr. Jiminez driving the Toyota Tundra at issue in the instant action and meeting with the head of

the drug trafficking operation in the vehicle.[4]  (Def. 56.1 ¶ 19; Genco Decl. ¶ 5; Lippin 1st Decl.

---

[3] Plaintiff notes that there exist two versions of the DEA Deputization form – one which includes Officer Genco's Signature under the Oath of Office and one which does not. (Pl. 56.1 ¶¶ 9-10; Brown Decl. Exs. 3, 4)  However, Plaintiff presents no evidence that the fully executed DEA Deputization form is or was invalid.

[4] Plaintiff contends that the meeting between Mr. Jiminez and the head of the drug trafficking operation is a disputed fact because one of the Report of Investigations attached to Ms. Lippin's first declaration does not indicate that Mr. Jiminez met with anyone in the Toyota Tundra. (Pl. 56.1 ¶ 19)  However, the fact that on one particular occasion

Ex. P)

On May 12, 2010, a warrant for Mr. Jiminez's arrest was obtained. (Genco. Decl. ¶ 9)
Officer Genco, along with another officer, arrested Mr. Jiminez in his apartment. (Def. 56.1 ¶
23) The Toyota Tundra was seized following Mr. Jiminez's arrest. (Lippin 1st Decl. Exs. L, P)
The seizure records indicate that Officer Genco was the "seizing agent," although Officer Genco
denies being responsible for the actual seizure. (Lippin 1st Decl. Exs. L, P; Genco Decl. ¶¶ 11,
12, 15) These records also indicate that the vehicle was seized pursuant to 21 U.S.C. § 881.
(Lippin 1st Decl. Ex. P)

DEA Special Agents Phildius and Montserrat transported the Toyota Tundra to the New
York Field Division ("NYFD") of the DEA, located at 99 Tenth Avenue, New York, New York.
(Def. 56.1 ¶ 28) Officer Genco played no role in transporting the vehicle to the NYFD. (Def.
56.1 ¶ 29)

On May 19, 2010, the vehicle was released by Special Agent Montserrat to Wells Fargo,
the lien holder. (Lippin 1st Decl. Ex. L) Officer Genco did not directly participate in the release
of the vehicle to Wells Fargo. (Def. 56.1 ¶ 32)

There is no record indicating that the Toyota Tundra was ever in the custody or control of
the New York City Police Department Property Clerk. (Lippin 1st Decl. Ex. T)

## III.    DISCUSSION

Defendants City of New York, the Property Clerk, and Officer Genco move for summary
judgment on all § 1983 claims asserted against them.[5] (Dkt. # 33) Defendants also ask this
Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims. (Dkt. #

---

Mr. Jiminez was not observed with anyone in the vehicle does not indicate that Mr. Jiminez was *never* observed
with anyone in the vehicle the vehicle.

[5] The Court having already dismissed all claims against Officer Genco in his official capacity, (Dkt. # 40), the only
claims that remain for consideration are those alleged against him in his individual capacity.

36) For the following reasons, Defendants' motion for summary judgment is GRANTED in its
entirety. Furthermore, the Court declines to exercise supplemental jurisdiction over Plaintiff's
state law claims.

### A. Claims Against Officer Genco In His Individual Capacity

As an initial matter, the parties dispute whether Officer Genco was acting under the
authority of the DEA (and therefore under color of federal law) or under the authority of the
NYPD (and therefore under color of state law). While the record indicates that Officer Genco
was acting under the authority of the DEA, this dispute is ultimately of minimal importance
because whether a federal agent or a city officer, Officer Genco can be held liable for depriving
an individual of his or her constitutional rights – 42 U.S.C. § 1983 provides the remedy for such
violations by state or municipal actors and *Bivens v. Six Unknown Named Agents of Federal
Bureau of Narcotics*, 403 U.S. 388 (1971) and its progeny provide the remedy for such violations
by federal actors.

More importantly, to be liable under either framework, Officer Genco must have
personally participated in the constitutional violation. *See Thomas v. Ashcroft*, 470 F.3d 491,
496 (2d Cir. 2006) ("Because the doctrine of *respondeat superior* does not apply in *Bivens*
actions, a plaintiff must allege that the individual defendant was personally involved in the
constitutional violation."); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in
this Circuit that personal involvement of defendants in alleged constitutional deprivations is a
prerequisite to an award of damages under § 1983.") (citing cases). Regardless of whether, on
May 12, 2010, Officer Genco was acting as a federal agent or a City officer, and therefore
regardless of whether Plaintiff claims she was deprived of her constitutional rights in violation of
§ 1983 or *Bivens* and its progeny, summary judgment is appropriate on these claims if Plaintiff

has failed to adduce evidence that Officer Genco personally participated in the deprivation of her constitutional rights.

The Court considers first what actions Officer Genco engaged in that might render him liable to Plaintiff. There is some evidence that Officer Genco was involved in the initial seizure of the Toyota Tundra; namely, two documents list Officer Genco as the seizing agent for the vehicle. However, there is no evidence that Officer Genco played any role in the vehicle's transportation to the NYFD or its subsequent release to the lien holder, Wells Fargo. Rather, the record demonstrates that it was Special Agents Phildius and Montserrat who transported the vehicle to the NYFD and that it was Special Agent Montserrat who released the vehicle to Wells Fargo. Indeed, Officer Genco expressly denies any involvement in these actions. Thus, Officer Genco's relevant conduct for purposes of this action is his alleged participation in the initial seizure of the vehicle.

Assuming that Officer Genco was the seizing agent for the Toyota Tundra, the question is whether Plaintiff has adduced evidence that the seizure violated her constitutional rights. The seizure form indicates that the vehicle was seized pursuant to 21 U.S.C. § 881. (Lippin 1st Decl. Ex. P) 21 U.S.C. §§ 881(a)(4) and 881(b), together with 18 U.S.C. § 981(b)(2)(B), allow the seizure of "[a]ll conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [illegal controlled substances]" without a warrant if, for example, there is probable cause to believe that the property is subject to forfeiture and the seizure is made pursuant to a lawful arrest. Plaintiff does not articulate a clear argument as to why the seizure of the Toyota Tundra was unconstitutional. Indeed, she fails to cite a single case on this point. Nonetheless, the Court has endeavored to identify her argument, which appears to be that the

7

seizure was unconstitutional because it was done without probable cause to believe that the vehicle was subject to forfeiture.[6] (Opp. 6-10) This argument is, however, unsupported by the record.

It is uncontested that Mr. Jiminez was lawfully arrested on May 12, 2010 and that the Toyota Tundra was seized at the time of Mr. Jiminez's arrest. (Def. 56.1 ¶ 23; Lippin 1st Decl. Exs. L, P) Prior to the arrest and seizure, wiretap intercepts revealed that Mr. Jiminez provided apartments to the head of the drug trafficking operation for the purpose of hiding narcotics and sales locations and that Mr. Jiminez received payment for these services. (Genco Decl. ¶ 6; Lippin 1st Decl. Ex. P) Officer Genco not only observed Mr. Jiminez driving the Toyota Tundra during surveillance operations of drug transfers, but he also observed Mr. Jiminez meet with the head of the drug trafficking operation in the vehicle. (Lippin 1st Decl. Ex. P; Genco Decl. ¶ 5) These facts are sufficient to establish reasonable grounds to believe that the vehicle was subject to forfeiture. *See e.g.*, *United States v. Gaskin*, 364 F.3d 438, 458 (2d Cir. 2004) (vehicle driven to meeting with a drug courier not only to negotiate future transports of marijuana but to take delivery of a load of marijuana was subject to forfeiture); *United States v. One 1974 Cadillac Eldorado Sedan*, 548 F.2d 421, 426 (2d Cir. 1977) (vehicle driven to meetings at which future drug sales were discussed was subject to forfeiture); *United States v. Sheth*, 782 F. Supp. 916, 917 (S.D.N.Y. 1992) (vehicle driven to meetings at which negotiations for the importation of narcotics were held was subject to forfeiture).

For the forgoing reasons, Plaintiff has failed to demonstrate that the seizure of the vehicle – the only alleged act in which Officer Genco arguably participated – violated her constitutional

---

[6] The Court notes that the warrantless seizure of a vehicle believed to be subject to forfeiture does not offend the Constitution. *See, e.g.*, *United States v. Gaskin*, 364 F.3d 438, 458 (2d Cir. 2004) ("[L]aw enforcement officers may seize forfeitable vehicles from public places without a warrant if they have probable cause to believe that the vehicle is, in fact, subject to forfeiture.") (citing *Florida v. White*, 526 U.S. 559, 561 (1999)).

rights. Consequently, Officer Genco's motion for summary judgment on all § 1983 claims asserted against him is GRANTED.

### B.  Claims Against the Property Clerk

According to Plaintiff's Amended Complaint, the Property Clerk violated Plaintiff's constitutional rights when it took possession of the Toyota Tundra from Officer Genco and then released the vehicle to Wells Fargo.  (Dkt. # 17)  The Property Clerk moves for summary judgment on all § 1983 claims asserted against it, contending that Plaintiff has failed to demonstrate that it ever had possession or control over the Toyota Tundra.  (Mot. 19-20)

Summary judgment is warranted for two reasons.  First, although not raised by the parties, the Court notes that the Property Clerk, as a subdivision of the NYPD, is not a suable entity. *East Coast Novelty Co. v. City of New York*, 781 F.Supp. 999, 1010 (S.D.N.Y. 1992).

Second, even if the Property Clerk could be sued, summary judgment would be appropriate because there is no evidence that it ever had possession or control over the Toyota Tundra – the Property Clerk has no records related to the vehicle, and the seizure and release records before the Court actually indicate that, following seizure, the vehicle was in the possession and/or control of the DEA until it was released to Wells Fargo.  Plaintiff does not respond to these points in her opposition, and she offers nothing to rebut the aforementioned evidence.

As a result, the Property Clerk's motion for summary judgment on all § 1983 claims asserted against it is GRANTED.

### C.  Claims Against the City of New York

The Court turns next to Plaintiff's § 1983 claims against the City.  There is no *respondeat superior* liability under § 1983.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).

9

Rather, § 1983 imposes liability only for "action[s] for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). The municipality is responsible if a violation of rights resulted from the "government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694.

The City moves for summary judgment on all § 1983 claims asserted against it on the grounds that Plaintiff has failed to adduce evidence that she suffered any constitutional harm as the result of a City custom or policy. (Mot. 16-19) The Court agrees. Even assuming that the seizure of the Toyota Tundra, its transport to the NYFD and/or its subsequent release to Wells Fargo violated Plaintiff's constitutional rights, Plaintiff has adduced no evidence that any of these acts occurred as the result of City policy or custom.

Indeed, Plaintiff offers no argument in support of her municipal liability claims except for a single line in her opposition suggesting that the use of an electronic NYPD form to document the arrest of Mr. Jiminez demonstrates a custom or policy. (Opp. 4) The Court is at a loss to understand how the use of a NYPD arrest form demonstrates a custom or policy that in any way relates to the seizure or release of Plaintiff's vehicle.

Because Plaintiff has failed to present any evidence that she suffered a constitutional harm as the result of City policy or custom, the City's motion for summary judgment on all § 1983 claims asserted against it is GRANTED.

### D. Plaintiff's State Law Claims

Finally, defendants City of New York, the Property Clerk, and Officer Genco ask the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims. (Mot. 20-22) Plaintiff makes no objection to this request.

A court may decline to exercise supplemental jurisdiction over state law claims when no federal claims remain for trial. *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). "[T]he decision whether to decline to exercise supplemental jurisdiction is purely discretionary," *Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir . 2011), and declining supplemental jurisdiction even though discovery has been completed is not an abuse of discretion, *Gilmore v. Gilmore*, No. 11–4091, 2012 WL 5935341, at *2 (2d Cir. Nov. 28, 2012).

Given that no federal claims remain against any of the defendants in this action, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV.   CONCLUSION

For the forgoing reasons, Defendants' motion for summary judgment, (Dkt. # 33) is GRANTED in its entirety.  The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: February 1, 2013
New York, New York

ALISON J. NATHAN
United States District Judge